**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**POINT 4 DATA CORP., et al.,**

                     **Plaintiffs,**

           -against-

**TRI-STATE SURGICAL SUPPLY &
EQUIPMENT, LTD., et al.,**

                     **Defendants.**
-------------------------------------------------------------x

**MEMORANDUM
AND ORDER**

**11-CV-726 (CBA)**

**ROANNE L. MANN, UNITED STATES MAGISTRATE JUDGE:**

      In February 2011, plaintiffs Point 4 Data Corporation and Dynamic Concepts, Inc. (collectively, "plaintiffs") commenced this action against defendants Tri-State Surgical Supply & Equipment, Ltd. ("Tri-State"), SJ Computers, and Shmuel Judkovitz (collectively, "defendants"). See Complaint (Feb. 14, 2011) ("Compl."), Electronic Case Filing Document Entry ("DE") #1. More than a year later, and only two-and-a-half months prior to the end of fact discovery, plaintiffs, over Tri-State's objection, moved to amend the complaint, seeking to add five new defendants — two corporate officers of defendant Tri-State and three corporate entities related to Tri-State. See Memorandum in Support of Plaintiffs' Motion to Amend ("Pl. Mot."), DE #160-2; Tri-State Memorandum in Opposition to Plaintiffs' Motion to Amend ("Def. Opp."), DE #168.

      On May 31, 2012, the Honorable Carol B. Amon referred plaintiffs' motion to the undersigned magistrate judge. See Order (May 31, 2012). For the reasons set forth below,

this Court denies plaintiffs' motion to amend.[1]

## BACKGROUND[2]

### I. The Original Complaint and Early Discovery

For a number of years, plaintiffs licensed and distributed software to defendant Tri-State. See Compl. ¶ 2. On February 14, 2011, plaintiffs filed the instant action, claiming that the three defendants -- Tri-State and its outside computer consultants -- unlawfully hacked into and modified plaintiffs' software to enable Tri-State to circumvent the software's security protections (hereinafter, the "Crack"). See generally id. Plaintiffs alleged that the Crack violated Tri-State's licensing agreement; the Digital Millennium Copyright Act, 17 U.S.C. § 1201 et seq.; and other federal and state laws. See Compl. ¶¶ 34-71. Plaintiffs also sought a temporary restraining order and preliminary injunction prohibiting Tri-State from using plaintiffs' software. See id. at pp. 22-23. On the same date that the complaint was filed, the Honorable Raymond J. Dearie, the district judge originally assigned to this case, signed a seizure order and TRO. See Order to Show Cause for Preliminary Injunction (Feb. 14, 2011), DE #3.

A few weeks later, Judge Dearie held a preliminary injunction hearing. See Minute Entry (Mar. 7, 2011), DE #35. At this hearing, defendants "agreed to provide full disclosure

---

[1] In opposing the motion, Tri-State also cross-moved for judgment on the pleadings. See Def. Opp. at 37-38. In an order dated May 14, 2012, this Court struck Tri-State's cross-motion for failing to comply with Judge Amon's Individual Rules. See Order (May 14, 2012), DE #177.

[2] A detailed history of this case is contained in this Court's recent report and recommendation on Tri-State's motion for partial summary judgment. See generally Report and Recommendation (June 13, 2012), DE # 196. Only those facts relevant to the instant motion to amend are recounted herein.

regarding the [Crack], including identifying the individuals and any financial transactions involved." See Memorandum and Order (docketed Mar. 23, 2011) ("3/23/11 M&O") at 2, DE #32.  After some initial resistance by defendants, see generally id., Tri-State produced, on March 31, 2011, a series of emails from 2010 concerning the Crack (the "2010 Emails").  See Affirmation of Tibor L. Nagy, Jr., in Opposition to Plaintiffs' Motion to Amend Complaint ("Nagy Aff.") ¶ 2, DE #170; see also Exhibits E through M to the Affirmation of Jason M. Koral in Support of Plaintiffs' Motion to Amend Complaint, DE #160-8 to #160-16.

The 2010 Emails included communications between defendants and DongleLabs, the third party hired by defendants to circumvent the security protections of plaintiffs' software. See, e.g., 2010 Email (June 10, 2010), DE #160-8.  The correspondence revealed not only the method by which DongleLabs accessed plaintiffs' software, but also the amount and method of payment defendants made to DongleLabs for completing the Crack.  See, e.g., id.; 2010 Email (June 22, 2010), DE #160-9.  Shimon Hoffman, the head of information technology for Tri-State and the son of Tri-State CEO George Hoffman, was copied on nearly all communications with DongleLabs.  In addition, the emails strongly suggested that Shimon Hoffman was responsible for ultimately authorizing and paying for the Crack.  See, e.g., 2010 Email (July 11, 2010), DE #160-11.  The 2010 Emails also revealed that George Hoffman was, at the very least, informed of the Crack and its consequences -- i.e., that it would circumvent the security protection and allow Tri-State to exceed the number of users authorized by its license with plaintiffs.  See id.; 2010 Email (July 18, 2010), DE #160-14 at 5.  George Hoffman was also copied on emails wherein defendant Shmuel Judkovitz ("Judkovitz") – Tri-State's paid IT consultant and the principal of defendant SJ Computers, Inc. – sought authorization from

Shimon Hoffman to install and upload the Crack and to pay DongleLabs for its work. See id.; 2010 Email (July 11, 2010), DE #160-11.

In May 2011, two months after receiving the 2010 Emails, plaintiffs Point 4 Data Corporation ("Point 4") and Dynamic Concepts, Inc. ("DCI") served responses to interrogatories propounded by Tri-State. See DCI Responses to First and Second Set of Interrogatories ("Pl. Responses"), DE #170-4.[3] Notably, in explaining the amount of damages sought against defendants, plaintiffs stated that "*[d]efendants*, including *George Hoffman*, *Shimon Hoffman* and Mr. Judkovitz actively participated in the creation of the hacked software, willfully disassembled and reverse-engineered UniBasic [the computer development platform on which the software operated], and created or manufactured a counterfeit or hacked Unibasic that can run on any server with unlimited users." Id. at 8 (emphasis added). Indeed, according to plaintiffs' May 2011 interrogatory responses: "The email correspondence that [d]efendants have produced clearly confirms their intention to hack, or as *Shimon Hoffman* stated, to 'crack' the software." Id. at 8 (emphasis added).

In addition to the 2010 Emails, Tri-State (at Judge Dearie's direction) also provided plaintiffs with a forensic image of Tri-State's server. See 3/23/11 M&O at 3. In April 2011, using the imaged copy of the server, Don Burden, CEO of plaintiff Point 4, collected the sales figures from each of the Tri-State-affiliated entities that had used the Crack, in order to calculate the disgorgement damages that plaintiffs claimed they were owed. See Nagy Aff., Exs. 6 and 7, DE #170-6 and #170-7, respectively. These entities included Tri-State Surgical

---

[3] It is undisputed that Point 4's interrogatory responses were essentially identical to the DCI responses cited herein. See Def. Opp. at 11 n.32.

West Corporation ("Tri-State West"), MBS, Ltd. ("MBS"), and H & H Laboratories, Inc. ("H & H Labs") (collectively, the "Related Entities"). See Nagy Aff., Ex. 6, DE #170-6 at 2-3.

## II. The Rule 16 Scheduling Conference

Shortly before defendants produced the 2010 Emails, this Court scheduled an initial conference to address the scope and timing of discovery. See Order (Mar. 23, 2012) at 1, DE #31. In its order scheduling the conference, the Court directed the parties "to discuss the matters specified in Fed. R. Civ. P. 26(f) and 16(b)." See id. To this end, the Court attached an "Initial Conference Questionnaire" (hereinafter the "Questionnaire"), which the parties were to jointly answer and bring with them to the initial conference. See id. at 4. Among other things, the Questionnaire required the parties to confer on a date for amending the pleadings and a date by which additional parties should be joined. See id. (Items #11 and #12).

Thereafter, the parties met and conferred regarding the Court's Questionnaire. On May 20, 2011, plaintiffs forwarded to defendants a copy of plaintiffs' proposed Questionnaire responses. See Email (May 20, 2012), DE #170-1. In their proposed responses, plaintiffs indicated that the time needed for amending the pleadings was "n/a" – that is, not applicable. See id. at 2. In addition, plaintiffs noted that they had zero additional parties to be joined, and therefore, the proposed deadline for completion of joinder was denoted as "n/a" – or, not applicable. See id. at 3.

On June 14, 2011, the Court conducted the initial conference. See Minute Entry (June 14, 2011) ("6/14/11 Minute Entry"), DE #46. At the conference, the parties submitted their finalized Questionnaire, which, like plaintiffs' proposed responses, indicated that the time

needed for amending the pleading was "n/a" and the time for joining additional parties was likewise "n/a" – in other words, not applicable. In reviewing the Questionnaire with the parties, the Court noted on the record that "there aren't going to be any amendments to the pleadings or any additional parties." Transcript (June 14, 2011) at 20, DE #49. Neither party objected to the Court's statement. See generally id. In reliance on both the Questionnaire and the parties' conduct at the conference, the Court, in issuing its Scheduling Order, did not include a deadline for amending the pleadings or bringing in additional parties, as the Court and the parties understood that the pleadings had been finalized and there would be no amendments or new parties. See Minute Entry (June 14, 2011), DE #46.

### III. Subsequent Discovery and Plaintiffs' Proposed Amended Complaint

In the months following the initial conference, and after an unsuccessful mediation session in early August 2011, the parties proceeded with discovery. In December 2011, plaintiffs took the depositions of Shimon Hoffman and George Hoffman. At Shimon Hoffman's deposition examination, plaintiffs elicited testimony that – as first established by the 2010 Emails – he had, in fact, authorized Judkovitz to engage DongleLabs for the purpose of circumventing plaintiffs' software security protection. See Excerpts of Shimon Hoffman Deposition, DE #160-6 at 4. George Hoffman testified at his deposition that, *inter alia*, (1) he gave Shimon authority to resolve Tri-State's issues with plaintiffs' software; (2) he knew that this meant "resolv[ing] the problem of having access to our computer"; and (3) was generally aware that Tri-State had hired DongleLabs to "assist[] in allowing us to access" plaintiffs' software. See Excerpts of George Hoffman Deposition ("G. Hoffman Dep."), DE #160-5 at 8, 21-22, 25. In addition, he confirmed what plaintiffs had uncovered from the image drive in

April 2011 — namely, that the Related Entities had made use of the Crack. See id. at 5, 12-13.[4] Finally, in response to an inquiry from plaintiffs' counsel, George Hoffman acknowledged that he had, within the month preceding his deposition, consulted with bankruptcy counsel on behalf of Tri-State. See G. Hoffman Dep. at 6.

Following the Shimon and George Hoffman depositions, the parties submitted a joint letter-motion to extend fact and expert discovery, which motion the Court granted. See Letter (Dec. 28, 2011) ("12/28/11 Def. Let."), DE #115; Endorsed Order (Dec. 29, 2011), DE #116. In the parties' letter to the Court, plaintiffs never indicated that they planned to amend their complaint and add new parties. See 12/28/11 Def. Let. Two months later, the parties again successfully sought to extend fact and expert discovery. See Letter (Feb. 23, 2012), DE #145; Endorsed Order (Feb. 24, 2012), DE #146. As before, plaintiffs did not disclose any desire to amend their complaint or bring in additional defendants. See generally id.

On March 8, 2012, more than one year after they filed their original complaint and almost one year after receiving the 2010 Emails, plaintiffs requested leave to amend their pleading. See Letter (Mar. 8, 2012), DE #149. In essence, plaintiffs seek to assert four of the five pending claims against five new defendants – Shimon Hoffman, George Hoffman, Tri-State West, MBS, and H & H Labs. See Proposed Amended Complaint, DE #160-4; Redline Comparison of Complaints, DE #170-12.

---

[4] Although George Hoffman implied in his deposition that MBS did not use plaintiffs' software, see G. Hoffman Dep. at 16-17, Chaim Roth, who apparently works for Tri-State and MBS, testified that MBS did use plaintiffs' software. See Deposition Testimony of Chaim Roth (Dec. 13, 2011), DE #160-17 at 2-3. Tri-State does not appear to dispute that MBS made use of the Crack. See generally Def. Opp.

# DISCUSSION[5]

In seeking to explain away their delay in making their motion, plaintiffs argue that, prior to the December 2011 depositions of Shimon and George Hoffman, plaintiffs "lacked key facts necessary to amend its [sic] complaint to add the new defendants," and that, once apprised of these "additional facts," they diligently sought to amend their complaint. Pl. Mot. at 7. Plaintiffs further contend that the amended complaint "will not affect the discovery schedule, trial schedule, nor impose any additional burden on either the existing or the newly added parties." Id. at 1.

In opposition, Tri-State asserts that the information elicited at the December 2011 depositions had been revealed in the 2010 Emails, and, thus, plaintiffs were not diligent in seeking to amend. See Def. Opp. at 1. In addition, Tri-State argues that plaintiffs' motion is a "tactical" move, made in bad faith only after plaintiffs learned that George Hoffman had been

---

[5] As a preliminary matter, and based on its review of applicable caselaw, this Court concludes that it is appropriate to issue its opinion as a Memorandum and Order, rather than a Report and Recommendation. Although the Second Circuit has not yet definitively ruled on the issue, but cf. Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007) (indicating in dictum that a motion to amend a complaint is "nondispositive" and governed by Fed. R. Civ. P. 72(a)); Kilcullen v. N.Y. State Dep't of Transp., 55 F.App'x 583, 584 (2d Cir. 2003) (applying Rule 72(a) standard to challenge to magistrate judge's denial of motion to amend), the "weight of authority" in this Circuit treats motions to amend pleadings as nondispositive, and subject to review under Rule 72(a) of the Federal Rules of Civil Procedure -- at least where the ruling does not involve a denial of leave to amend that foreclose a party from asserting potential claims. See Wilson v. City of New York, No. 06-CV-229(ARR)(VVP), 2008 WL 1909212, at *3-4 (E.D.N.Y. Apr. 30, 2008) (collecting cases). In particular, courts have routinely applied the "clearly erroneous" standard of review where, as here, "the ruling is based on procedural grounds," such as the movant's failure to satisfy the "good cause" requirement of Rule 16 of the Federal Rules of Civil Procedure. See, e.g., Oppenheimer & Co. Inc. v. Metal Mgmt., Inc., No. 08 Civ. 3697(LTS)(FM), 2010 WL 743793, at *1 (S.D.N.Y. Mar. 2, 2010) (citing Sokol Holdings, Inc. v. BMB Munai, Inc., No. 05 Civ. 3749(KMW)(DCF), 2009 WL 3467756, at *3-4 (S.D.N.Y. Oct. 28, 2009)).

consulting with a bankruptcy attorney.  See id. at 2.  In their reply, plaintiffs concede that the 2010 Emails "provide[d] significant evidence" that the Hoffmans were aware of the Crack, but they argue that those emails "left some ambiguity concerning the Hoffmans' role[s] in directing and approving [the Crack]."  Memorandum of Law in Reply to Tri-State's Opposition ("Pl. Reply") 7-8, DE #180.  Plaintiffs further contend that George Hoffman's deposition established, *inter alia*, that he "owns, controls and directs the affairs" of the Related Entities.  See id. at 12.

I.   **Applicable Legal Standard**

Before reaching the merits of plaintiffs' motion to amend, this Court must, as a threshold matter, identify the applicable legal standard.  Plaintiffs contend that the dispute is governed by Rule 15 of the Federal Rules of Civil Procedure, see Pl. Mot. at 5, whereas defendants posit that Rule 16 applies.  See Def. Opp. at 6-7.  Neither side cites any case law to support its argument regarding the appropriate legal standard.

Typically, once an answer is served, Rule 15 allows a plaintiff to amend its complaint "only with the opposing party's written consent or the court's leave."[6]  Fed. R. Civ. P. 15(a)(2).  A court should "freely give" leave to amend "when justice so requires."  Id.; Anderson News, LLC v. Am. Media, Inc., 680 F.3d 162, 185 (2d Cir. 2012) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)).

---

[6] Although plaintiffs have framed their motion as one to amend under Rule 15, plaintiffs also seek to add new parties, which implicates Rule 20 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 20.  Regardless, the analysis for Rule 15 is substantially the same as that for Rule 20.  See Oneida Indian Nation of N.Y. State v. Cnty. of Oneida, 199 F.R.D. 61, 72 (N.D.N.Y. 2000) (collecting cases).

Nevertheless, where a court has set a scheduling order pursuant to Rule 16, a court must first address whether the party seeking to amend has shown "good cause" for modifying the scheduling order. See Fed. R. Civ. P. 16(b)(4); Kassner v. 2nd Ave. Delicatessen, Inc., 496 F.3d 229, 243-44 (2d Cir. 2007). One purpose of Rule 16 is to "offer a measure of certainty in pretrial proceedings, ensuring that 'at some point both the parties and the pleadings will be fixed.'" Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983)). If the party seeking the amendment satisfies the "good cause" standard of Rule 16, the court then determines whether the movant also meets the liberal standards of Rule 15. See Kassner, 496 F.3d at 244.

Here, the Court conducted a scheduling conference, established all applicable deadlines, and issued a Rule 16 scheduling order ("Rule 16 Order") summarizing the unexpired deadlines. See 6/14/11 Minute Entry. While the Rule 16 Order itself does not expressly set a deadline for amending the pleadings or bringing in additional parties, see id., that omission was predicated on the parties' submitted Rule 26(f) discovery plan, which stated that a deadline for joinder and amendment was "not applicable." See *supra* p. 5. At the conference, the Court reviewed the parties' position with them and neither side objected or attempted to qualify in any way their representations to the Court. Thus, the issue is whether Rule 16's "good cause" standard for modifying a scheduling order applies to proposed amendments to the pleadings, where, because of the parties' representations to the Court that there would be no amendments or additional parties, the scheduling order itself does not include such a deadline.

As revealed by the Court's independent research, unaided by the parties on this issue,

the answer to that question is yes. In analogous contexts, courts within the Second Circuit have applied Rule 16 to motions to amend, even though the scheduling orders were otherwise silent as to amendments. See Grant v. Citibank (S.D.), N.A., No. 10 Civ. 2955 (KNF), 2010 WL 5187754, at *6 (S.D.N.Y. Dec. 6, 2010); Nairobi Holdings Ltd. v. Brown, No. 02 Civ. 1230 (LMM), 2006 WL 2242596, at *2 (S.D.N.Y. Aug. 3, 2006); In re Wireless Tel. Servs. Antitrust Litig., No. 02 Civ. 2637 DLC, 2004 WL 2244502, at *5 n.6 (S.D.N.Y. Oct. 6, 2004); see also 380544 Canada, Inc. v. Aspen Tech., Inc., No. 07 Civ. 1204 (JFK), 2011 WL 4089876, at *3 (S.D.N.Y. Sept. 14, 2011) (applying Rule 16 in absence of formal Rule 16 order). As those courts concluded, Rule 16 will apply, even absent a specific deadline in a scheduling order, where the record contains some indication that the court and the parties understood that the pleadings would not be further amended. See In re Wireless Tel. Servs., 2004 WL 2244502, at *5 n.6 (although "[p]laintiffs deny that the prior scheduling order set a deadline for amendments to the pleadings[,]" the court held that its various orders, "and the conferences which proceeded them, left no doubt" that there would be no further amendments); see also 380544 Canada, 2011 WL 4089876, at *3 (although parties' stipulation did not include explicit "final" deadline to amend, Rule 16 applied because prior court opinion limited the opportunity to replead); Nairobi Holdings, 2006 WL 2242596, at *2 (Rule 16 applicable where prior court opinion limited the opportunity to replead); cf. Volunteer Fire Ass'n of Tappan, Inc. v. Cnty. of Rockland, No. 09-CV-4622 (CS), 2010 WL 4968247, at *3 (S.D.N.Y. Nov. 24, 2010) (although deadline for amendments "was not part of a formal Rule 16 scheduling order," Rule 16 was applicable, where the court "by verbal order and then by

endorsement" set such a deadline).

Various courts outside this Circuit have likewise concluded that where, as here, the parties convey to the court that there will be no further amendments after the court's case-management conference, Rule 16's "good cause" standard applies even though the resulting scheduling order does not specifically contain a deadline for amending the pleadings. See, e.g., Graham v. Progressive Direct Ins. Co., 271 F.R.D. 112, 119 (W.D. Pa. 2010) (where parties represented to the court that they did not intend to amend and the scheduling order simply stated "n/a" for deadline to amend, Rule 16 governed motion to amend); cf. Phillips v. Greben, Civil No. 04-5590 (GEB), 2006 WL 3069475, at *6 (D.N.J. Oct. 27, 2006) (magistrate judge did not error in denying motion to amend under Rule 16 where scheduling order did not include deadline for amendment because "it was certainly clear" that the time to amend would expire at least by the close of discovery).[7]

Plaintiffs cannot and do not dispute that "the Rule 16 order's lack of inclusion of a deadline to amend was based on the Court's understanding that [p]laintiffs did not have any intent to amend." Pl. Reply at 6. While assuring the Court that at the initial conference they "truly did not have th[e] intent" to amend, see id., they nevertheless argue that, "from the

---

[7] The Court's research has uncovered other out-of-circuit cases that declined to apply Rule 16 where the scheduling order did not include a deadline for amending the pleadings. See, e.g., Kingsburg Apple Packers, Inc. v. Ballantine Produce Co., No. 1:09-CV-901 AWI JLT, 2012 WL 718638, at *2 (E.D. Cal. Mar. 5, 2012); Kunin v. Costco Wholesale Corp., No. 10-11456, 2011 WL 6090132, at *2 (E.D. Mich. Dec. 7, 2011); S. Shrimp Alliance v. La. Shrimp Ass'n, Civil Action No. 07-3268, 2009 WL 3447259 at *3 n.2 (E.D. La. Oct. 20, 2009). However, in contrast to this case, none of those decisions cited any facts to suggest that it was nevertheless understood that there would be no further amendments.

[p]laintiffs['] point of view, not having a firm deadline for amendments preserved some flexibility . . . ." Pl. Mot. at 6. However, contrary to the premise of plaintiffs' disingenuous argument, the parties' failure to request a deadline for amending the pleadings "does not leave the date open-ended, but rather means that this motion is brought out of time." EEOC v. Joslin Dry Goods Co., Civ. Action No. 05-CV-00177-WDM-MEH, 2007 WL 2045510, at *1 (D. Colo. July 10, 2007). The whole point of requiring parties to meet and confer on a proposed deadline to amend for Rule 16 purposes is to provide the parties and the Court with a certain "measure of certainty," see Parker, 204 F.3d at 340 (citing Fed. R. Civ. P. 16 advisory committee's note (1983)) -- not to inject additional uncertainty into the scheduling process.

In any event, plaintiffs never indicated to the Court, either in their written report or at the scheduling conference, that their notation "not applicable" simply meant "maybe later." To be sure, in hindsight, the Court regrets that it did not make explicit in the Rule 16 Order what was obvious from the parties' Rule 26(f) discovery plan and the discussion at the initial scheduling conference: that the time for amending the pleading and joining new parties had come and gone. Given the parties' failure to object to the Court's statement on the record that there would not be any amendments or additional parties, it is appropriate, on these facts, to analyze plaintiffs' motion to amend under Rule 16 standards.

**II.     Whether Plaintiffs Have Established "Good Cause" to Add Defendants**

Rule 16 allows a party to obtain a modification of a scheduling order "only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). As plaintiffs' concede, it is the

movant's burden to show good cause. See Pl. Reply at 6; see also Parker, 204 F.3d at 340; Nairobi Holdings, 2006 WL 2242596, at *3. "Whether good cause exists turns on the diligence of the moving party." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotations and citations omitted). A party is not diligent if a proposed amendment to the pleading is based on information "that the party knew, or should have known," in advance of the deadline sought to be extended. See Sokol Holdings, Inc. v. BMB Munai, Inc., No. 05 Civ. 3749 (KMW) (DF), 2009 WL 2524611, at *8 (S.D.N.Y. Aug. 14, 2009) (collecting cases), aff'd, 2009 WL 3467756 (S.D.N.Y. Oct. 28, 2009). Although diligence is the primary focus of a "good cause" analysis, a court may, in its discretion, also consider other factors, such as whether "allowing the amendment of the pleading at this stage of the litigation will prejudice defendants." Kassner, 496 F.3d at 244.

Here, plaintiffs have not established that they were diligent in bringing the instant motion. First, with respect to Shimon and George Hoffman, the 2010 Emails provided plaintiffs, at the very outset of the case, with strong documentary evidence that the Hoffmans were aware of and participated in the Crack. Indeed, in interrogatory responses served by plaintiffs on May 31, 2011, plaintiffs cited to the 2010 Emails in asserting that "defendants" Shimon and George Hoffman (along with defendant Judkovitz) had "actively participated" in the Crack, with the "intention to hack" plaintiffs' software. See Pl. Responses at 8; *supra* pp. 3-4. Despite this evidence and plaintiffs' awareness of it, nearly two weeks later, at the June 14, 2011 initial conference, plaintiffs disclaimed any intention of amending the complaint or adding new parties.

Ignoring the aforesaid interrogatory responses, plaintiffs now claim that the 2010

-14-

Emails were ambiguous as to whether the Hoffmans approved the Crack and that therefore plaintiffs did not feel comfortable bringing claims against them until their suspicions could be verified at their depositions.[8] See Pl. Reply at 7-8; Transcript of Pre-Motion Conference (Mar. 27, 2012) at 20, DE #162 (plaintiffs' counsel concedes that under a "fair view" of the 2010 Emails, they provided sufficient grounds for amending the complaint, but that plaintiffs' counsel, who typically represents defendants, was reluctant to bring claims without "solid basis"). Plaintiffs' explanation is unavailing, and their reliance on Enzymotec Ltd. v. NBTY, Inc., 754 F.Supp.2d 527 (E.D.N.Y. 2010), is misplaced. See Pl. Mot. at 16. Obviously, a party may not seek to amend based on "factual speculation." See Enzymotec, 754 F.Supp.2d at 537. Here, however, the 2010 Emails admittedly provided plaintiffs with a good faith basis for adding the Hoffmans as defendants. Plaintiffs' desire for a more "solid basis" did not give them the right to tell the Court they would not be amending; to thereafter obtain extensions of the discovery deadlines without disclosing their intent to build a case against the Hoffmans; and then to evade the requirements of Rule 16 by recasting the Court's oral ruling so as to grant the parties *carte blanche* to amend the pleadings whenever they liked. See generally 380544 Canada, 2011 WL 4089876, at *4 (finding no good cause to amend under Rule 16, where newly discovered documents "may have buttressed [p]laintiffs' allegations of scienter, but they [] had enough information to plead" their new claim much earlier).

    Perhaps sensing the weakness in their initial motion papers, plaintiffs' reply highlights a

---

[8] Although the depositions were not held until December 2011, plaintiffs do not dispute Tri-State's claim that the Hoffmans were offered for deposition as early as August 2011. See Def. Opp. at 8 n.24 (citing Nagy Aff., Ex. 2).

different rationale for their delay in seeking to amend. Whereas the initial motion papers emphasized that plaintiffs needed deposition testimony to "properly establish[]" the 2010 Emails' "suggestion" of the Hoffmans' involvement, see Pl. Mot. at 4, the reply papers claim that "the motion to amend is motivated in significant part by its concern that Tri-State's principals . . . may seek to frustrate any ultimate judgment against Tri-State by diverting funds," Pl. Reply at 30, and/or by filing for bankruptcy. See Pl. Reply at 2-3; see also id. at 1. Even assuming *arguendo* that these concerns did not arise until December 2011, the diligence inquiry focuses not on when plaintiffs learned of facts relevant to *their motivation* to amend, but rather when they learned of the facts underlying *their potential claims* against the proposed defendants. In other words, "where the *substance* of the proposed amendment was known to the movant prior to the deadline for amending pleadings, but the movant nevertheless failed to act, courts have denied leave to amend under Rule 16." 380544 Canada, 2011 WL 4089876, at *3 (emphasis added) (citing Volunteer Fire Ass'n of Tappan, 2010 WL 4968247, at *4); Oppenheimer & Co. Inc. v. Metal Mgmt., Inc., No. 08 Civ. 3697 (LTS) (FM), 2009 WL 2432729, at *3 (S.D.N.Y. July 31, 2009) (while recently produced documents "may further have underscored the potential viability of [plaintiff's proposed amendment], the issue was not new"), aff'd, 2010 WL 743793 (S.D.N.Y. Mar. 2, 2010); Rent-A-Center, Inc. v. 47 Mamaroneck Ave. Corp., 215 F.R.D. 100, 104 (S.D.N.Y. 2003)); see Sokol Holdings, Inc., 2009 WL 2524611, at *8; see also Anwar v. Fairfield Greenwich Ltd., No. 09 Civ. 0118(VM)(THK), 2012 WL 1415621, at *2-3 (S.D.N.Y. Apr. 13, 2012). Because the significant role played by the two Hoffmans in procuring the Crack was disclosed to plaintiffs as early as March 2011 -- two and a half months prior to the Court's initial conference with the

parties -- their attempts in March 2012 to bring claims against the Hoffmans cannot in good conscience be considered diligent.

As for the Related Entities, plaintiffs concede that even prior to filing the lawsuit in February 2011, they knew that these entities -- which "shared a single license for the [s]oftware with Tri-State" -- were using plaintiffs' software. See Pl. Mot. at 10. Indeed, in June 2011, plaintiffs produced a document created in April 2011 by Point 4's CEO, using data from the forensic image of Tri-State's server, and calculating plaintiffs' disgorgement damages based on the use of plaintiffs' software by the Related Entities. See *supra* p. 4. Tri-State correctly cites these facts as demonstrating plaintiffs' lack of diligence in bringing in these corporate entities. See Def. Opp. at 15.

In reply, plaintiffs counter that Tri-State's argument "overlooks the critical additional information provided by the depositions, including that: (1) George Hoffman owns, controls and directs the affairs of the Related [Entities]; (2) the Related [Entities] utilized [the Crack] to circumvent its security protections; and (3) the financial results of the Related [Entities] are consolidated into Tri-State's own financial statements." Pl. Reply at 12. As for the first and third "critical" facts, plaintiffs do not adequately explain why they are "critical," or why plaintiffs could not have ascertained these facts much earlier in the proceeding. As for the second "critical" fact -- that the Related Entities used the Crack version of the software -- the record reflects that as early as April 2011, plaintiffs, who had access to the image drive, were calculating disgorgement damages premised on the assumption that the Related Entities made use of the Crack. Contrary to plaintiffs' argument, the question presented under Rule 16 is not whether the image server screen shot, standing alone, could "prove" that the Related Entities

used the software, see Pl. Reply at 13; after all, naming a defendant in a complaint is the beginning, not the end, of the litigation process. Plaintiffs had a good faith basis for charging the Related Entities early on and, in waiting until 2012 to seek to assert claims against Tri-State West, MBS and H & H Labs, plaintiffs failed to act with diligence.

Moreover, in assessing "good cause" under Rule 16, the Court may consider other factors such as prejudice. Defendants as well as the Court would be prejudiced by plaintiffs' belated amendments, as the period for fact and expert discovery has ended, and requests for pre-motion conferences on dispositive motions are due this week. See Rodriguez v. Athenium House Corp., No. 11 Civ. 5534 (LTS) (KNF), 2012 WL 2161284, at *3 (S.D.N.Y. June 14, 2012) (no good shown cause where, *inter alia*, modifying expert discovery deadline at the parties' joint request would, "at a minimum," result in delaying dispositive motion deadline and final pre-trial conference). Moreover, although plaintiffs disclaim any intention to seek to reopen discovery, this ignores the fact that the Related Entities and the Hoffmans would be entitled to conduct their own discovery. Whether or not the prejudice would be sufficient under Rule 15 is beside the point: defendants (and the Court) would certainly suffer some prejudice by the filing of an amended complaint this late in the proceeding, as that would necessarily prolong the resolution of the case. In any event, the absence or minimal nature of prejudice to the non-moving party does not trump the movant's lack of good cause under Rule 16. See, e.g., Oppenheimer, 2009 WL 2432729, at *3-4. Having found that plaintiffs did not act diligently, the Court denies their motion to amend.[9]

---

[9] Tri-State does not oppose plaintiffs' addition to their complaint of a new paragraph 44,
(continued...)

## CONCLUSION

For the reasons stated above, this Court denies plaintiffs' belated motion to amend their complaint and add new parties.

Any objections to the rulings contained in this Memorandum and Order must be filed with the Honorable Carol B. Amon on or before July 13, 2012. Failure to file objections in a timely manner may waive a right to appeal the District Court order.

     **SO ORDERED.**

**Dated:**    **Brooklyn, New York**
             **June 27, 2012**

                                        /s/ *Roanne L. Mann*
                                        **ROANNE L. MANN**
                                        **UNITED STATES MAGISTRATE JUDGE**

---

[9](…continued)
which particularizes the technological measure that defendants are alleged to have circumvented. See Def. Opp. at 4 n.14. Under these circumstances, the Court will permit plaintiffs to make that one minor modification to their pleading, preferably by stipulation of the parties.