UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
POINT 4 DATA CORP. and DYNAMIC
CONCEPTS, INC.,

                      Plaintiffs,

             - against –

TRI-STATE SURGICAL SUPPLY &
EQUIPMENT, LTD., SJ COMPUTERS,
INC. and SHMUEL JUDKOVITZ,

                     Defendants.
------------------------------------------------------------x

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
11 CV 726 (CBA) (RLM)

AMON, Chief United States District Judge:

      This Court has received the Report and Recommendation ("R&R") of the Honorable Roanne L. Mann, United States Magistrate Judge, dated June 13, 2012, recommending that the motion for partial summary judgment filed by defendant Tri-State Surgical Supply & Equipment, Ltd. ("Tri-State") be granted in part and denied in part. Plaintiffs Point 4 Data Corp. ("Point 4") and Dynamic Concepts, Inc. ("Dynamic") have filed objections to that portion of the R&R that recommends rejecting their claim to all of Tri-State's gross profits during an eight-month period, pursuant to the damages provision of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 1203(c)(2). For the reasons below, the Court adopts the R&R in full, with the following elaborations.

    **I.**    **BACKGROUND**

      The Court assumes the parties' familiarity with the history of this litigation, and incorporates the statement of facts set forth in the R&R, which the plaintiffs have also incorporated by reference into their objections memorandum. (See Pl. Obj. at 2.)

1

## II. STANDARD OF REVIEW

In reviewing a Report and Recommendation, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The court must make a de novo determination of those aspects of the Report and Recommendation to which a party has filed objections. Id. To adopt portions of the Report and Recommendation to which no party has objected, "a district court need only satisfy itself that there is no clear error on the face of the record." Wilds v. United Parcel Service, Inc., 262 F.Supp.2d 163, 169 (S.D.N.Y.2003). Moreover, where the party "makes only conclusory or general objections, or simply reiterates [his] original arguments, the Court reviews the Report and Recommendation only for clear error." Silva v. Peninsula Hotel, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007).

## III. DISCUSSION

The plaintiffs argue that in rejecting their disgorgement claim, the magistrate judge applied an unreasonably narrow interpretation of the DMCA. The plaintiffs thus continue to insist that they have adequately demonstrated that all of Tri-State's gross profits for the period at issue were "attributable to" Tri-State's acts of circumvention under 17 U.S.C. § 1203(c)(2). The plaintiffs further assert that they should not be precluded from altering their disgorgement theory in response to the R&R, and thereby reserving the opportunity to present proof of disgorgeable profits from Tri-State in the future. The Court has reviewed the plaintiff's objections, most of which were squarely addressed in the R&R, and has considered the relevant issues de novo. In sum, the Court concludes that the recommendations contained in the magistrate judge's thoughtful and detailed R&R are entirely appropriate, especially under the facts of this particular case.

To begin with, the Court agrees with the R&R's conclusion that profits generated by use of a protected work subsequent to an act of circumvention are generally not disgorgeable under the DMCA. The DMCA's remedial provisions allow for disgorgement of profits "attributable to the violation." See 17 U.S.C. §§ 1201(a)(1)(A); 1203(c)(2). As the parties agree, a DMCA violation is triggered only by an act of circumvention—here, Tri-State's alleged circumvention of certain security measures contained in the Genesys/UniBasic software package ("the Crack")—or trafficking in circumvention technology; the statute does not apply to mere use of copyrighted material. See Universal City Studios, Inc. v. Corley, 273 F.3d 429, 443 (2d Cir. 2001). However, in claiming an entitlement to all of Tri-State's profits that followed the implementation of the Crack, the plaintiffs rely heavily on the fact that internal use of the Genesys/UniBasic software—for tracking and processing orders, invoices, financials, and inventories—was integral to the running of Tri-State's business. Importantly, at the time of any DMCA violation, Tri-State was a licensed user of Genesys/UniBasic, was authorized to access and use the underlying software content, and had been using it in its business for several years. (Pl. 56.1 Stmt. at ¶¶ 12-15.)

The magistrate judge properly observed that allowing DMCA plaintiffs, like those here, to disgorge all the profits attributable to use of the software at issue would effectively allow an end-run around the specific requirements of a suit for copyright infringement. See R&R at 10-11; MGE UPS Systems, Inc. v. GE Consumer and Indus., Inc., 622 F.3d 361, 366 (5th Cir. 2010) ("Because § 1201(a)(1) is targeted at circumvention, it does not apply to the use of copyrighted works after the technological measure has been circumvented. . . . [Too] broad a construction would extend the DMCA beyond its intended purposes to reach conduct already well-regulated by existing copyright laws."). The Court disagrees with the plaintiffs' contention that the

standards for liability under the DMCA are irrelevant to the question of permissible monetary relief. (Pl. Obj. at 3-4.) The Second Circuit has squarely stated that "the DMCA <u>does not concern itself</u> with the use of [protected] materials after circumvention has occurred," Corley, 273 F.3d at 443 (emphasis added), and the DMCA itself provides that "[n]othing in this section shall affect rights, remedies, limitations, or defenses to copyright infringement," 17 U.S.C. § 1201(c)(1). In light of this guidance, it would seem counterintuitive to hold that where the defendant accessed a protected work through an act of circumvention, a DMCA plaintiff may recover all the profits attributable to the defendant's use of that work, without bringing any claim for copyright infringement, even though the acts of use are not DMCA violations. The logical tension of such an argument is of course heightened in this case, where the defendant was licensed to use the software at issue in its ongoing business operations at the time of the alleged circumvention.

The Court is also not persuaded by the plaintiffs' argument that the magistrate judge's construction of the DMCA as excluding use-generated profits would "virtually eliminate the statutory entitlement to disgorgement in § 1201(a)(1) cases for parties actually committing acts of circumvention as opposed to trafficking in circumvention services and technology" under § 1201(a)(2). (Pl. Obj. at 5.) The DMCA's damages and disgorgement provision does not distinguish between § 1201(a)(1) and (a)(2), but rather provides broadly that "a person committing a violation of section 1201" may obtain disgorgement of profits attributable to the violation that are not included in the actual damages calculation. 17 U.S.C. § 1203(c). It is by no means illogical to interpret this language in a way that makes trafficking violations under § 1201(a)(2) the clearest cases for disgorgement. And, this case itself presents circumstances where acts of circumvention may give rise to disgorgeable profits under the DMCA: defendants

4

Judkovitz and SJ Computers may have received payments for their work in implementing the Crack, and the R&R appropriately states that the plaintiffs could still pursue disgorgement of those amounts. R&R at 21. Further, the Court does not express its opinion as to whether, on similar facts, disgorgement might be appropriate if the plaintiffs could show that Tri-State used the Crack to in fact exceed its prior user limit, and that new capability caused a demonstrable increase in Tri-State's sales and revenue. As the magistrate judge noted, such a showing has not been made or contended here. R&R at 7 n.6. The magistrate judge's DMCA interpretation also does not foreclose the possibility that disgorgement could be appropriate in a case where the defendant commits an act of circumvention in order to unlawfully copy and resell a protected work for profit. See Corley, 273 F.3d at 435 (noting that enacting the DMCA, Congress was "[f]earful that the ease with which pirates could copy and distribute a copyrightable work in digital form was overwhelming the capacity of conventional copyright enforcement to find and enjoin unlawfully copied material"). In sum, it does not appear contrary to reason or to the DMCA statutory language and purpose to conclude that on the record here, the plaintiffs are not entitled to disgorge all of Tri-State's indirect business profits based only on the company's continued use of the Genesys/UniBasic software following the circumvention.

Moreover, the Court believes that even if the DMCA can be interpreted to allow for disgorgement of profits generated through subsequent use of the protected material, the plaintiffs here have not drawn an adequate connection between Tri-State's gross profits and the Genesys/UniBasic software or the Crack. In this respect, most of the plaintiffs' attempts to draw upon copyright precedents are misguided.

To be clear, in contrast to the copyright infringement cases they have cited, the plaintiffs in this case are not arguing that Tri-State's use of the Genesys/UniBasic software had an

observable impact on the number of customers attracted to Tri-State's business or the number of medical products those customers purchased. (See Pl. Obj. at 4.) Tri-State's gross profits were not generated through selling the Genesys/UniBasic software or somehow referring to it in advertisements or promotions, but rather were the end result of Tri-State's business of selling medical supplies to customers who apparently had no knowledge of or interest in the brand of internal management software used at the company. The Court agrees with the R&R that plaintiffs' efforts to seek disgorgement of these amounts is simply too speculative and attenuated, even under the standards employed in copyright cases. See R&R at 16 (collecting cases).

Furthermore, the lack of a burden-shifting framework for apportioning profits under the DMCA suggests that a plaintiff has a more exacting duty than a copyright plaintiff to show a causal connection between the DMCA violations and the defendant's profits. See R&R at 14-17. The plaintiffs do not even appear to acknowledge the significant disconnect between the profits of a medical supply business and the internal use of a particular accounting software, let alone attempt to account for other factors that contributed to Tri-State's revenues.

The plaintiffs' continued attempt to analogize this case to Andreas v. Volkswagen of America, Inc., 336 F.3d 789 (8th Cir. 2003) fails. In Andreas, the Eighth Circuit declined to vacate a jury verdict awarding the plaintiff 10% of defendant Audi's profits from sales of a certain vehicle, the commercial for which had infringed the plaintiff's copyrighted text. The court found that the plaintiff had met his initial burden (under the Copyright Act's burden-shifting framework) of showing a nexus between the infringing commercial and the profits from the vehicle sales, based on several pieces of evidence presented at trial. Id. at 796-97. The court held that after this initial showing, "Audi then bore the burden of establishing that its profit was

6

attributable to factors other than the infringing words: the other two commercials that did not contain the infringed words, other parts of the . . . commercial [at issue], customer loyalty, brand recognition, etc." Id. at 797. Audi had met this burden at trial with considerable success, given that the jury's award reflected its apparent conclusion "that 90% of Audi's profit was attributable to factors other than the infringement." Id. at 798. The court also noted that while it may in some cases be "difficult to establish the portion of profits attributable to an infringement . . . Congress put the burden of establishing 'elements of profit attributable to factors other than the copyright work' on the defendant." Id. at 799 (quoting 17 U.S.C. § 504(b)).

In Andreas, not only was the protected material used in advertisements to generate product sales, which is not the case here, but the opinion reflects that a careful consideration of a variety of factors and evidence may be necessary in order to distill which indirect profits are in fact "attributable to" an act of copyright infringement under § 504(b). The outcome in Andreas was also inextricably bound up in § 504(b)'s burden-shifting framework, and demonstrates how the plaintiffs' continued reliance on copyright disgorgement standards does little to advance their claim that they have made adequate showing under the DMCA, which places the entire burden of demonstrating that profits are "attributable to the violation" on the plaintiffs. In the Court's view, merely showing that the software was an important tool in the internal operations of the Tri-State's business does not establish a sufficient causal connection under the DMCA between Tri-State's gross profits and either the acts of circumvention or the continued use of Genesys/UniBasic.

As the plaintiffs acknowledge, the DMCA disgorgement issue raised on this motion appears to be one of first impression, and accordingly, the plaintiffs' objections memorandum is thin on citations to DMCA case law, and consists largely of arguments that were already

7

considered in the R&R.  On the facts presented in this case, and until there exists more guidance from the Court of Appeals, this Court finds the R&R's reasoning entirely persuasive.

Finally, the Court declines to allow the plaintiffs a third opportunity to resubmit a disgorgement claim against Tri-State.  See R&R at 20-21.  The Court disagrees that the R&R "implicitly conceded that IT cost savings realized by Tri-State's implementation of the crack could constitute disgorgeable profits."  (Pl. Obj. at 6.)  In fact, the cited portion of the R&R says only that "plaintiffs have <u>not alleged any theory</u> of damages – <u>or offered any proof</u> of lost profits – related to the occasional server disruptions that were avoided by defendants' implementation of the Crack."  R&R at 19 n.10 (emphasis added).  An observation that the plaintiffs had not presented any argument or evidence on a particular issue does not "implicitly concede" anything.  And, the fact that buried in plaintiffs' submissions was an exhibit related to Tri-State's IT costs prior to implementing the Crack does not mean that the magistrate judge improperly "overlooked" evidence relevant to her analysis.  These IT invoices were apparently only submitted to demonstrate that Tri-State sought the assistance of outside consultants, rather than the plaintiffs, when it was having difficulty with the software.  (Pl. 56.1 Stmt ¶141 & n.103.)  The invoices were never part of any disgorgement theory that plaintiffs articulated—despite being offered multiple opportunities to do so by the magistrate judge, and despite being well apprised of Tri-State's arguments against disgorgement.  Indeed, even in their objections memorandum, the plaintiffs have not clearly explained, let alone cited any legal authority supporting, why Tri-State's alleged IT cost savings related to third-parties would automatically translate into recoverable profits under the DMCA and the facts of this case.

As stated by the magistrate judge, "a judicial ruling on summary judgment that identifies flaws in a plaintiff's analysis is not an invitation to the plaintiff to alter its theory and resubmit it

for reconsideration." R&R at 21. The plaintiffs are not entitled to a third opportunity to reformulate a theory and evidence by which they can still attempt to disgorge a portion of Tri-State's profits. As noted in the R&R, the plaintiffs may still pursue either actual or statutory damages and may pursue disgorgement of any profits received by defendants Judkovitz and SJ Computers for their work on the Crack. R&R at 21.

The plaintiffs have not objected to the magistrate judge's rejection of their alternative disgorgement theories, and the Court finds no clear error in the magistrate judge's conclusions on those points. Similarly, no party has objected to the magistrate judge's recommendation regarding statutory damages, and finding no clear error, the Court adopts those conclusions here: on the facts accepted by both parties for purposes of this motion, each user log-in gave rise to a separate "act of circumvention" under § 1203(c)(3). As the R&R notes, this conclusion does not foreclose Tri-State from factually contesting how the Crack operated or "the total number of circumventions" that occurred. See R&R at 5, 23 n.13

## IV. CONCLUSION

For the stated reasons, the Court adopts the R&R in full.

SO ORDERED.

Dated: Brooklyn, New York
August 13, 2012

_____/s/_____
Carol Bagley Amon
Chief United States District Judge

9